10000

BERG ET AL. v. WESTERN UNION TELEGRAPH COMPANY.

(96 S. E. 248.)

1. COMMERCE — "INTERSTATE COMMERCE" — TELEGRAM. — A telegram received by the telegraph company at Charleston, S. C., for transmission to Ridgeland, S. C., which was sent to Savannah, in Georgia, where it was relayed and then transmitted to Ridgeland, was an interstate message within Interstate Commerce Act Feb. 4, 1887, c. 104, sec. 1, 24 Stat. 379, as amended by act Cong. June 18, 1910, c. 309, sec. 7, 36 Stat. 544 (U. S. Comp. St. 1916, sec. 8563), providing the act shall not apply to the transmission of messages by telephone, telegraph, or cable wholly within one State.

2. TELEGRAPHS AND TELEPHONES — FAILURE TO DELIVER — MENTAL ANGUISH—FEDERAL LAW.—The Federal law does not recognize mental anguish as an element of damage in actions against telegraph companies for failure to deliver messages.

3. TELEGRAPHS AND TELEPHONES—WILFUL FAILURE TO DELIVER—LIABILITY—FEDERAL RULE.—In the Federal Courts a telegraph company is not liable for the wilfulness of its servant in failing to deliver a telegram, unless it had knowledge before the event or afterwards ratified the wrongful act.

Before SMITH, J., Jasper, Fall term, 1917.    Affirmed.

Action by J. E. and Ala May Berg against the Western Union Telegraph Company. Judgment for defendant, and plaintiffs appeal.

*Mr. H. Klugh Purdy,* for appellant, submits: *The message, in question, was not an interstate transaction:* 180 S. W. 502; 57 Ind. App. 93; 104 N. E. 771; 187 U. S. 617. *As to punitive damages:* Vol. I, S. C. Code, 1912, sec. 3330; 24 Fed. Stats. 379; 36 Fed. Stats. 539; 34 Stats. 595; 191 U. S. 486; 74 So. 779; 220 U. S. 364; 234 U. S. 542. *As to evidence of wilfulness:* 89 S. C. 190; 92 S. C. 216; 90 S. C. 540.

*Messrs. Albert T. Benedict* and *Nelson & Gettys,* for respondent, cite: *As to actual damages under State law:* 70 S. C. 418; 70 S. C. 539; 72 S. C. 294; 74 S. C. 491; 101

S. C. 159. *As to no mental anguish under the Federal law:*
94 S. E. 870; 29 S. C. 510; 81 S. C. 169; 92 S. C. 43; 91
S. E. Rep. 154; 187 U. S. 617; 23 Sup. Ct. 214; 47 L. Ed.
333; 91 S. E. 157; 236 U. S. 568; 36 Sup. Ct. 419; 59 L.
Ed. 721; 162 Pac. 708; 71 S. E. 815; 187 U. S. 617; 174
Ky. 210; 231 Fed. 405; 162 U. S. 654; 93 S. E. 467; 147
N. C. 66; 60 N. E. 721 (C. C.); 18 Fed. 10; 102 U. S. 541;
26 L. Ed. 224; *Davis et al. v. W. U. T. Co.* (Kansas City
Court of Appeals, not yet reported); 226 U. S. 491; 116
Va. 1009; 91 S. E. Rep. 154; 93 S. E. Rep. 465; 174 Ky.
210. *As to punitive damages under the State law:* 75 S. C.
182; 82 S. C. 87; 84 S. C. 482. *As to punitive damages
under Federal law:* 147 U. S. 108; 13 Sup. Ct. 261; 37 L.
Ed. 97; 105 S. C. 289; 90 S. E. 701; 94 S. E. 870.


June 25, 1918.

The opinion of the Court was delivered by Mr. Chief
Justice Gary.


This is an action for compensatory and punitive damages,
on account of the defendant's failure to deliver the follow-
ing message, which was received by the defendant at Charles-
ton, S. C., for transmission to J. S. Berg, at Ridgeland,
S. C.:

"Meet eighty-nine tonight.   (Signed) Ala."

The defendant did not transmit the message directly from
Charleston to Ridgeland, which places are in the State of
South Carolina, but sent it to Savannah, in the State of
Georgia, where it was relayed and then transmitted to
Ridgeland.   At the close of the testimony the defendant's
attorneys made a motion for the direction of a verdict, which
was granted, and the plaintiff appealed on three grounds:
(1) Because his Honor, the presiding Judge, erred in ruling
that the message was interstate in its nature; (2) because he
erred in refusing to submit to the jury the question as to

the plaintiff's right to recover actual damages, for mental anguish; and (3) because he erred in refusing to submit to the jury the issue as to punitive damages.

The first question that will be considered is whether it was an interstate message. The Interstate Commerce Act, as amended in 1910, provides: "That the provisions of this act shall apply to any corporation, * * * engaged in the transportation of oil or other commodity * * * *and to telegraph, telephone and cable companies (whether wire or wireless), engaged in sending messages from one State* * * * *to any other State,* * * * who shall be considered and held to be common carriers, within the meaning and purpose of this act, * * * Provided, however, *That the provisions of this act, shall not apply to the transportation of passengers or property, or to the receiving, delivering, storage or handling of property, wholly within one State, and not shipped to or from a foreign country, from or to any State or territory as aforesaid, *nor shall they apply to the transmission of messages by telephone, telegraph or cable, wholly within one State, and not transmitted to or from a foreign country, from or to any State or territory as aforesaid.*" U. S. Comp. St. 1916, sec. 8563.

The words which we have italicized were inserted by the amendment of 1910. The provisions of the section which we have quoted, in regard to the transportation of passengers and property, are similar to those relative to the transmission of messages by telegraph, telephone and cable. In the case of *Hanley v. Kansas City Ry.,* 187 U. S. 617, 23 Sup. Ct. 214, 47 L. Ed. 333, the Court held that where freight was delivered to a carrier to be transported to another place within the same State, and the route extended partly through another State, the shipment came within the provisions of the Interstate Commerce Act. In that case the Court quoted with approval the following language from *Pacific Coast S. S. Co. v. R. R. Commissioners (C. C.)* 18 Fed. 10, 9 Sawy. 253:

"To bring the transportation within the control of the State, as part of its domestic commerce, the subject transported must be within the entire voyage under the exclusive jurisdiction of the State."

There are three cases in this State in which that question has been considered. *Sternberger v. Railway,* 29 S. C. 510, 7 S. E. 836, 2 L. R. A. 105; *Hunter v. Railway,* 81 S. C. 169, 62 S. E. 13; *Traynham v. Railway,* 92 S. C. 43, 75 S. E. 381. In the last mentioned case, the Court used this language:

"As an interstate transporation must be regarded as an entirety, it is difficult to conceive how a delay may take place within a State, without being affected by causes operating at some other place on the line of railroad, even in another State. It would certainly be an onerous burden on interstate commerce to hold that a shipment during its actual transportation could be subjected to State legislation, at any point on the line whatever, before it reached its destination."

The words in the proviso to section 1 of the Interstate Commerce Act, "that the provisions of this act shall not apply to the transportation of passengers or property * * * wholly within one State," etc., and the words, "nor shall they apply to the transmission of messages by telegraph, telephone or cable, wholly within one State," etc., were intended to declare that the transportation or transmission which was only partly within a State should be subject to the provisions of the Interstate Commerce Act, for the reason that only such portion of the instrumentalities, used in the transportation or transmission, located in a particular State, can be subjected to the legislation of that State, but not of any other State. No other reasonable construction can be placed on that section. Our conclusions are sustained by the following authorities: *W. U. T. Co. v. Lee,* 174 Ky. 210, 192 S. W. 70; *Gardner v. W. U. T. Co.,* 231 Fed. 405, 145 C. C. A. 399; *W. U. T. Co. v. Bolling,* 120 Va. 413, 91 S. E. 154; *W. U. T. Co. v. Mahone,* 120 Va. 422, 91 S. E. 157;

*W. U. T. Co. v. Kaufman* (Okl.), 162 Pac. 708; *Davis v. W. U. T. Co.* (Kansas), March term 1918, 173 Pac. —; *Bateman v. W. U. T. Co.,* 174 N. C. 97, 93 S. E. 467, L. R. A. 1918a, 803, and notes.

Having reached the conclusion that this is an interstate message, it is only necessary to cite the case of *Hall v. W. U. T. Co.,* 94 S. E. 870, to sustain the proposition that the Federal law does not recognize mental anguish as an element of damages in such cases.

The last question is whether there was error in directing a verdict as to punitive damages. The cases of *Turman v. Railway,* 105 S. C. 287, 89 S. E. 655, and *DeLoach v. Railway,* 106 S. C. 155, 90 S. E. 701, announced the rule in the Federal Court that the master is not liable for the wilfulness of the servant unless he had knowledge before the event, or afterwards ratified the wrongful act of the servant.

There is, however, no testimony tending to establish such facts.

Affirmed.